IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FREDRICK OGHENERO ADEGOR
and JACQUELINE POINDEXTER,

Plaintiffs,

v.

ALEJANDRO MAYORKAS, et al.,

Defendants.

CIVIL ACTION FILE
NO. 1:22-CV-2111-TWT

**OPINION AND ORDER**

This is an action for injunctive relief under the Administrative Procedures Act. It is before the Court on the Plaintiffs' Motion for Summary Judgment [Doc. 13] and the Defendants' Motion for Summary Judgment [Doc. 14]. For the reasons set forth below, the Plaintiffs' Motion for Summary Judgment [Doc. 13] is DENIED, and the Defendants' Motion for Summary Judgment [Doc. 14] is GRANTED.

I. Background[1]

Plaintiff Frederick Adegor is a 46-year old Nigerian citizen. (Certified Administrative Record ("CAR"), Doc. 12, at 10-11). Mr. Adegor is married to

---

[1] The operative facts on the Motion for Summary Judgment are typically taken from the parties' Statements of Undisputed Material Facts and the responses thereto. However, neither party provided Statements of Undisputed Material Facts here. The Court will therefore deem the parties' factual assertions in their motions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

Plaintiff Jacqueline Poindexter, a U.S. citizen. (CAR at 16). Mr. Adegor entered the United States on June 16, 2017 on a B-2 visitor visa with authorization to remain in the United States until December 15, 2018. (CAR, at 11). The Plaintiffs met on the dating app Tinder in August 2017 and became engaged in November 2017. (CAR, at 453). The Plaintiffs were married in January 2018 in Douglasville, Georgia. (CAR, at 454).

On October 4, 2018, Ms. Poindexter filed an I-130 Petition for Alien Relative, listing Mr. Adegor as her spouse. (CAR, at 53-55). On the same date, Mr. Adegor filed an I-485 Application for Adjustment of Status, relying on Ms. Poindexter's I-130 Petition, to adjust his status to lawful permanent resident. (CAR, at 10-16). The Plaintiffs were asked to appear before USCIS for an interview on their filings, after which USCIS sent them a Notice of Intent to Deny ("NOID"). (CAR, at 31, 450-456). In the NOID, USCIS explained that the record evidence did not establish the existence of a bona fide spousal relationship. (CAR, at 31-32). In making this determination, USCIS relied on several discrepancies it found in the record. First, USCIS noted that although a joint residential lease on a home ("Riverdale home") was submitted for the period from May 1, 2018 to May 1, 2019, Ms. Poindexter also had a lease on an apartment ("Candler apartment") during the same time period. (CAR, at 32). The agency also noted that the Plaintiffs' joint bank statements did not reflect that their bank account was used to support a marital home. (*Id.*). Additionally, USCIS noted that Ms. Poindexter's earning statements reflected the Candler

2

apartment address rather than the Riverdale home as her home address. (*Id.*). The agency noted that the Plaintiffs also submitted joint insurance plan information, pictures together, joint tax returns, joint utility bills, and affidavits attesting to the bona fide nature of their marriage, but the agency did not reflect on the weight of this evidence in the NOID. (*Id.*).

The Plaintiffs were interviewed separately and, in the NOID, USCIS pointed out what it perceived were discrepancies in the answers the Plaintiffs gave to the same questions. For example, when asked "[w]here and when did you propose to your spouse?", Ms. Poindexter answered "[i]n the bed at his house in November/December 2017," while Mr. Adegor answered "[a]t my place in our bed it was November, I think first 2017." (*Id.* at 33). When asked "[w]hat did you do after your wedding?", Ms. Poindexter answered "[w]e packed a bag and we spent the weekend at a hotel (I don't remember the hotel name) in Stockbridge," and Mr. Adegor answered "[w]e went to the hotel (something Inn) we went Friday to Sunday." (*Id.*). And when asked "[d]o you have a TV in your bedroom? How many TV's do you have in your home? Do you have cable?", Ms. Poindexter answered "[y]es. 3 TV's only using 2. No.", while Mr. Adegor answered "[y]es. 2. No." (*Id.*).

In response to the NOID, the Plaintiffs submitted notarized affidavit statements explaining some of the discrepancies pointed out by USCIS. As relevant, in her letter, Ms. Poindexter stated that she lived at the Candler apartment from June 2011 until she moved in with Mr. Adegor in May 2018.

(CAR, at 133). She stated that when she moved out, her 18-year old son wanted to keep living in the apartment, "which was possible because he was already listed on the lease." (*Id.*). She stated that her son continued living in the apartment until the lease ended in June 2019, but she lived with Mr. Adegor in the Riverdale home during that time. (*Id.*).

In March of 2022, USCIS issued its decision denying Ms. Poindexter's I-130 petition. (CAR, at 99). In its decision, it noted that although the Plaintiffs submitted joint tax returns in response to the NOID, the tax returns reflected only Ms. Poindexter's income. (CAR, at 100). However, Ms. Poindexter noted in the interview that Mr. Adegor was unemployed. (CAR, at 455). USCIS also noted that statements from the Plaintiffs' joint bank account "carr[ied] little weight in showing . . . commingled assets" because the account had only been used to pay utilities sporadically. (CAR, at 100). Additionally, in a second NOID, the agency pointed to a notarized statement of Ms. Poindexter's son, in which he supported her statement that she moved out of the Candler apartment while he stayed there until June 2019. (CAR, at 96-97). USCIS explained that it contacted the manager of the apartment complex, who "confirmed" that Ms. Poindexter resided at the Candler apartment with her son until June 2019 and, in a lease renewal dated April 2018—three months after the Plaintiffs were married—Ms. Poindexter indicated that she was "never married." (CAR, at 97). The agency additionally relied on vehicle registration records for vehicles Ms. Poindexter obtained in September 2018

4

and July 2019, both of which were registered to the Candler apartment address. (*Id.*). USCIS relied on the foregoing evidence to conclude that Ms. Poindexter's actions "indicate[d] that [she] did not live with the beneficiary, or hold [themselves] out as husband and wife, for at least the first year and a half of [their] marriage. (*Id.*). The agency also explained that the photograph evidence provided appeared staged and that statements from Ms. Poindexter's mother and friend, and from Mr. Adegor were vague, lacked detail, and addressed only the inconsistencies in the Plaintiffs' interview testimony, but were not supported by "competent objective evidence." (*Id.*). The Plaintiffs did not file an appeal with the Board of Immigration Appeals, and instead filed this action.

## II. Legal Standards

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact

exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). District courts apply a narrow standard of review to agency decisions under the APA and are permitted to set aside agency action that is "arbitrary or capricious." *Id.* (quoting 5 U.S.C. § 706(2)(A)) (quotation marks omitted). This standard requires the agency to "examine the relevant data and articulate a satisfactory explanation for its action." *Id.* (quotation marks omitted). Moreover, a district court is not permitted to "substitute its judgment for that of the agency . . . and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 513-14 (quotation marks omitted). To facilitate judicial review, the agency "must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48-49 (citations omitted). A district court is permitted to set aside an agency's decision "only if the agency relied on improper factors, failed to consider important relevant factors, or committed a clear error of judgment that lacks a rational connection between the facts found and the choice made." *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1279 (11th Cir. 2007) (quotation marks and citation omitted). To that end, district courts may not set aside an agency's decision under this standard "simply because the court is unhappy with the result reached." *Rodriguez v. U.S. Dep't of Homeland*

*Sec.*, 808 F. App'x 973, 976 (11th Cir. 2020) (quotation marks and citation omitted).

Under the Immigration and Nationality Act, certain relatives of U.S. citizens may petition for an immigrant visa based on their relationship to a U.S. citizen. 8 U.S.C. § 1151(a)(1). A U.S. citizen initiates the process by filing an I-130 Petition for Alien Relative to classify the beneficiary of the petition as an immediate relative under the INA. 8 U.S.C. § 1154(a)(1)(A)(i). If the I-130 petition is approved, the beneficiary may then apply for an adjustment of status to that of a lawful permanent resident. 8 U.S.C. § 1255(a).

I-130 petitions "filed on behalf of any alien for whom there is substantial and probative evidence of" a conspiracy to "enter onto a marriage for the purpose of evading immigration laws" are to be denied. 8 C.F.R. § 204.2(a)(1)(ii); *see also* 8 U.S.C. § 1154(c). A U.S. citizen who files an I-130 petition on behalf of a non-citizen spouse bears the burden of demonstrating that the marriage was legally valid and bona fide at the time it was entered into. See 8 U.S.C. § 1361; *Rojas v. Sec'y, Dep't of Homeland Sec.*, 675 F. Appx. 950, 953 (11th Cir. 2017). In the immigration context, the 11th Circuit has explained that substantial evidence exists when a reasonable person could accept the evidence to support a conclusion. *See Venevision Prods. LLC v. Dir., Tx. Serv. Ctr.*, 680 F. App'x 802, 804 (11th Cir. 2017). If USCIS denies the I-130 petition, the decision can be appealed to the Board of Immigration Appeals for a de novo review. 8 C.F.R. § 103.3(a)(1)(ii); 8 C.F.R. § 1003.1(b)(5), (d)(3)(iii).

### III. Discussion

Because the parties Motions for Summary Judgment address the same issues and arguments, the Court will address them together. First, in their Motion for Summary Judgment, the Plaintiffs argue that they met their burden to prove by a preponderance of the evidence that their marriage was bona fide at its inception. (Pl.'s Mot. for Summ. J., at 8-9). In particular, the Plaintiffs point to their marriage certificate, numerous joint utility bills and bank account statements, life insurance, joint tax returns, and multiple affidavits from friends and family confirming the legitimacy of their marriage. (*Id.* at 9-10). On that basis, the Plaintiffs argue that USCIS failed to consider the totality of the evidentiary record in making its determination, resulting in a determination that was arbitrary and capricious. (*Id.* at 10).

Second, in its Motion for Summary Judgment, the Government argues that contrary to the Plaintiffs' position, the administrative record was replete with discrepancies relating to the comingling of their finances, cohabitation, and generally sharing a life together. (Gov't's Mot. for Summ. J., at 2). The Government also contends that despite opportunities to rebut USCIS's intent to deny Ms. Poindexter's I-130 Petition, Ms. Poindexter has been unable to do so, including failing to explain why the evidence showed that she lived separately from Mr. Adegor. (*Id.* at 16-18). To that end, the Government contends that the evidence the Plaintiffs submitted to rebut the NOID was largely self-serving and the financial records she submitted, to the extent they

8

were credible, did not demonstrate a "true commingling of finances." (*Id.* at 18-22). Finally, the Government argues that the Plaintiffs' Motion improperly asks the Court to reweigh the evidence de novo. (*Id.* at 22-23).

The Court agrees that much of the Plaintiffs argument essentially asks the Court to reweigh the evidence and come to a different conclusion than USCIS did. (*See, e.g.*, Pl.'s Mot. for Summ. J., at 9 ("The weight of [the] evidence in the record clearly shows Plaintiffs provided significant evidence to prove, by a preponderance of the evidence, that the aforementioned marriage was indeed *bona fide*."). This Court is not tasked with a de novo review of the evidence under the APA, however, and the Plaintiffs could have sought a de novo review before the BIA but declined to do so. *See* 5 U.S.C. § 706(2)(A); 8 C.F.R. § 103.3(a)(1)(ii); 8 C.F.R. § 1003.1(b)(5), (d)(3)(iii). Having reviewed the entire certified administrative record, the Court cannot conclude that USCIS's decision to deny Ms. Poindexter's I-130 petition and, as a result, Mr. Adegor's I-485 application, was arbitrary and capricious.

As USCIS noted in its decision, the record evidence raised doubt as to whether the Plaintiffs actually lived together at the Riverdale home from May 2018 and onward, given Ms. Poindexter's lease at the Candler apartment for some of that time and her use of the Candler apartment address on important documentation. (CAR, at 87-93, 100-01, 414, 421-35, 438). Moreover, Ms. Poindexter renewed her application for a lease at the Candler apartment in April 2018, a few months after her marriage, and checked a box indicating she

was "never married." (CAR, at 509). Additionally, the Plaintiffs' joint checking account statements showed little transaction history, which tends to demonstrate that their finances were commingled. (CAR, at 153-78). And during their joint interview, the Plaintiffs had differing answers to a few straightforward questions, such as whether Mr. Adegor proposed with a ring and whether the two exchanged gifts for Christmas that year. (CAR, at 453-54).

The Court notes that the record evidence contradicts USCIS's conclusions in a few respects. First, although the Plaintiffs' joint bank statements show little activity in the account, several of the charges appear to be for utilities and Zelle payments for rent on the Riverdale home, as corroborated by the Plaintiffs' interview testimony. (CAR, at 153-78, 455 (reflecting payments to Eyal Dahan, Georgia Power, and Comcast)). Moreover, while the joint tax returns submitted primarily reflect Ms. Poindexter's income, the Court would not necessarily expect to see income from Mr. Adegor on the Plaintiffs' joint tax returns. It is unclear that Mr. Adegor is legally authorized to work in the United States, given that he was initially admitted on a visitor visa, this case concerns the denial of his application to adjust his status to that of a lawful permanent resident, and he stated during the interview that he was not working. (CAR, at 11, 394-420, 455). Finally, the Plaintiffs' interview answers were largely consistent, with USCIS pointing out minor discrepancies in its decision. For example, when asked "[w]hat did you do after your wedding?", Ms. Poindexter answered "[w]e packed a bag and we

10

spent the weekend at a hotel (I don't remember the hotel name) in Stockbridge," and Mr. Adegor answered "[w]e went to the hotel (something Inn) we went Friday to Sunday." (CAR, at 454). And when asked "[d]o you have a TV in your bedroom? How many TV's do you have in your home? Do you have cable?", Ms. Poindexter answered "[y]es. 3 TV's only using 2. No.", while Mr. Adegor answered "[y]es. 2. No." (CAR, at 455). In the Court's view, these responses convey the same answers.

Nonetheless, the Court is not permitted to set aside USCIS's decision on the ground that it might have reached a different conclusion if it had been in USCIS's shoes. *Rodriguez*, 808 F. App'x at 976. As far as the APA is concerned, USCIS was required only to consider the evidence and articulate a satisfactory explanation for its action, and it has done so here. *Fox Television Stations, Inc.*, 556 U.S. at 513-14. In both NOIDs and the final decision denying Ms. Poindexter's decision, USCIS explained the evidence that it relied on and how the evidence supported the decision to deny her I-130 petition. The Plaintiffs have not argued that USCIS relied on improper factors or failed to consider any relevant factors, nor would there be any support in the record for such an assertion. *U.S. Steel Corp.*, 495 F.3d at 1279. And the Court cannot say that USCIS's decision "lacks a rational connection between the facts found and the choice made," given the evidence supporting a conclusion that the Plaintiffs did not actually reside together or comingle finances, at least for a substantial period at the beginning of their marriage. *See id.* The evidence relied on by

11

USCIS therefore reasonably supported its decision that the Plaintiffs' marriage was not bona fide at its inception and, on that basis, its decision to deny Ms. Poindexter's I-130 petition, and Mr. Adegor's I-485 application as a result, was neither arbitrary nor capricious. *Venevision Prods. LLC*, 680 F. App'x at 804; 8 U.S.C. § 1361 (providing that an I-130 petitioner bears the burden of demonstrating that the marriage was legally valid and bona fide at the time it was entered into); 8 U.S.C. § 1255(a) (noting that a prerequisite for an I-485 application is an approved I-130 petition). For these reasons, the Defendants' Motion for Summary Judgment is granted, and the Plaintiffs' Motion for Summary Judgment is denied.

## IV. Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment [Doc. 13] is DENIED, and the Defendants' Motion for Summary Judgment [Doc. 14] is GRANTED.

SO ORDERED, this ___22nd___ day of May, 2024.

*/s/ Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge